**FILED**

**DECEMBER 20, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**



| | | |
|---|---|---|
| AUTO UNDERWRITERS PORTFOLIO ACQUISITION COMPANY, INC., a Texas corporation; AUTO UNDERWRITERS FINANCE COMPANY, INC., a Texas corporation; AUTO UNDERWRITERS OF AMERICA, INC., a California corporation; | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **07 C 7160** |
| vs. | ) ) | **JUDGE COAR** |
| AGM, LLC, a Delaware limited liability company. | ) ) ) | **MAGISTRATE JUDGE COX** |
| Defendant. | ) ) | |

**COMPLAINT**

Plaintiffs AUTO UNDERWRITERS PORTFOLIO ACQUISITION COMPANY, INC. (hereinafter individually referred to as "AUP"), AUTO UNDERWRITERS FINANCE COMPANY, INC. (hereinafter individually referred to as "AUF"), AUTO UNDERWRITERS OF AMERICA, INC. (hereinafter individually referred to as "AUA") (collectively, the "Plaintiffs"), by and through their attorneys, Epstein Becker & Green, P.C., complain against the Defendant, AGM, LLC (hereinafter referred to as "Defendant AGM") and hereby allege as follows:

**<u>NATURE OF THE CASE</u>**

This case arises out of Defendant AGM's material breach of an Escrow, Servicing and Consignment Sales Agreement (hereinafter referred to as "Consignment Agreement") dated July 19, 2007.   A true and correct copy of the Consignment Agreement is attached hereto as Exhibit "A".   Specifically, Defendant AGM has terminated the Consignment Agreement, but failed and

DA:341990v4

refused to refund down payment funds (hereinafter referred to as the "Down Payment") in the amount of $964,000, as required by Section I, paragraph 5, at 4, of said agreement. Further, Defendant AGM failed to pay Plaintiffs the amounts due and owing for services rendered under the terms of the Consignment Agreement, in an amount not less than $90,000 (hereinafter referred to as the "Service Compensation"). As a result, Plaintiffs have been damaged cumulatively in an amount totaling approximately $1,054,000, exclusive of prejudgment interest, attorneys' fees and/or additional costs related to bringing this action.

By its improper actions at the expense of Plaintiffs, Defendant AGM has been unjustly enriched with monies rightfully belonging to Plaintiffs. Further, Defendant AGM's willful and wanton disregard for the rights of Plaintiffs constitute an unlawful conversion of monies to which Plaintiffs are entitled to immediate possession. Finally, by falsely and materially misrepresenting the financial bases and prospects for completing this Consignment Agreement, Defendant AGM fraudulently induced Plaintiffs into entering the Consignment Agreement and related agreements thereto.

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff AUP is a corporation organized and existing under the laws of the state of Texas, with its principal place of business also located in the State of Texas.

2.    Plaintiff AUF is a corporation organized and existing under the laws of the state of Texas, with its principal place of business also located in the State of Texas.

3.    Plaintiff AUA is a corporation organized and existing under the laws of the state of California, with its principal place of business also located in the State of Texas.

4.    Defendant AGM is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business is located in or around Northbrook, Illinois.

5.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum of Seventy-Five Thousand ($75,000) Dollars, exclusive of interest and costs.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§1391 (a) (1) and (2) because AGM's principal place of business is in this District and because a substantial part of the events giving rise to this claim occurred within this judicial district. The parties, by contract, also designated Cook County, Illinois as the appropriate forum for matters arising out of the relationship of the parties.  *See e.g.*, Section 5, Paragraph 6, at 19 of Ex. A.

## BACKGROUND

7.    Plaintiff AUA is engaged in the business of non-prime auto financing, specialty automotive retailing and direct lending. The company acquires, directly or through intermediaries, installment contracts originated by automobile dealers in connection with their sale of new and used vehicles to borrowers with limited credit histories or past credit problems.  Dean Antonis, an individual and citizen of the State of California, is President and CEO of AUA.

8.    Plaintiffs AUP and AUF are wholly owned subsidiaries of AUA and all are generally engaged in the same businesses.  William Kellagher, an individual and citizen of the State of Texas, is President of AUP and AUF.

9.  Defendant AGM is involved in the business of originating Collateralized Debt Obligations and other structured finance securitizations and funds.

10. In approximately the spring and early summer of 2007, Defendant AGM was seeking a purchaser of certain motor vehicles and receivables which it then owned and which were related to an automobile dealership located in Houston, Texas known as Tex-Star Motors, Inc. and its finance arm, Ranger Credit, Inc.

11. During this time period, negotiations between Defendant AGM and representatives of Plaintiffs ensued. As a result of such negotiations, the parties agreed that Plaintiff AUP would purchase the said package of motor vehicles and receivables for the total amount of Sixteen Million, Three Hundred Fifty-Seven Thousand, Three Hundred Seventy-Six and 03/100 Dollars ($16,357,376.03).

12. At the time that the Consignment Agreement was reached, however, Plaintiff AUP, which was the intended purchaser, did not possess the necessary automobile finance license issued by the State of Texas to allow the transaction to go forward (this license hereinafter referred to as the "Necessary License"). In light of this fact, Plaintiffs and Defendant AGM agreed that the transaction should go forward with Plaintiff AUF fulfilling the obligations contemplated by the parties, pending approval of Plaintiff AUP for the Necessary License.

13. As a result of the understanding by the parties described above in ¶ 12, on or about July 19, 2007, Plaintiffs and Defendant entered into the Consignment Agreement.

14. As stated in the recitals to the Consignment Agreement, on that same day, the parties hereto entered into several other agreements including, particularly, an

agreement for the purchase of the motor vehicles and receivables referred to at ¶ 11 above. This agreement was titled "Receivables and Motor Vehicle Purchase Agreement" and is hereinafter referred to as the "Purchase Agreement."  A true and correct of the Purchase Agreement is attached hereto as Exhibit "B".

15. The Consignment Agreement governed the relationship and responsibilities of the parties thereto until such time as AUP obtained the Necessary License. At that time, it was intended by the parties that the Purchase Agreement be carried out and the sale accomplished.

16. Pursuant to terms of the Consignment Agreement, specifically the second Whereas recital thereof, Plaintiffs transferred the sum of Nine Hundred Sixty-Four Thousand Dollars ($964,000) to Defendant AGM as the Down Payment towards the overall purchase price described at ¶ 11 above.

17. On or about December 4, 2007, and since execution of the Consignment Agreement, Defendant AGM provided written notice of its intent to terminate the Consignment Agreement.  A true and correct copy of Defendant AGM's December 4, 2007 termination letter from Gregory Bell, Manager for Defendant AGM to William Kellagher, on behalf of Plaintiffs AUA and AUP, is attached hereto as Exhibit "C".

18. Upon termination of the Consignment Agreement, as set forth under Section I, Paragraph 5 of said Consignment Agreement, AGM is required to promptly pay the Plaintiffs an amount equal to the Down Payment, *e.g.* $964,000.

19. Repayment of this sum is only excused on the occurrence of either of two events, specifically:

"…In the Event of an Escrow Termination, Seller shall promptly pay to Buyer/Borrower an amount equal to the Cash Down Payment and the amounts TL-A Payment and TL-B Payments paid to the Portfolio Collection Account (if any) to Buyer/Borrower, provided that Seller shall not be obligated to make such payment in the event that the Release Conditions are not satisfied due to (i) the applicable Texas licensing authority having rejected Buyer/Borrower's application for a Finance License at a time when such applicable Texas licensing authority is issuing such Finance Licenses to any other (sic)applicable or (ii) the Buyer/Borrower shall have failed to deliver a fully executed Consignment Agreement."

(Consignment Agreement, Section I, Paragraph 5, at 4-5 of Ex. A).

20.     As of the date of Defendant AGM's termination, the State of Texas had neither rejected nor accepted AUP's application for the Necessary License. Subsequently, on or about December 18, 2007, the State of Texas issued its approval of AUP's application for the Necessary License. A true and correct copy of documentation confirming the agency approval is attached hereto as Exhibit "D".

21.     As of the date of Defendant AGM's termination, Plaintiffs had executed and delivered to Defendant AGM a fully executed Consignment Agreement.

22.     Notwithstanding the fact that neither of the disqualifying conditions had occurred as of December 4, 2007, nor have occurred at any time through and including the filing of this Complaint, Defendant AGM has failed and refused to make repayment of the Down Payment of $964,000, despite demand by the Plaintiffs.

23.     Beyond requiring refund of the Down Payment under the present circumstances, the Consignment Agreement further states that Plaintiff AUF will provide Defendant AGM with certain services including sales of Defendant's vehicles on consignment and servicing (collection) of certain note receivables for cars

previously sold and financed by Defendant. *See, e.g.,* Section II, at 5-12, of Ex. A. The Consignment Agreement further provided that Plaintiffs would be reimbursed for certain out of pocket expenses including the repair of Defendant AGM's vehicles, sales taxes, repossession costs and title fees. *See* Section II, Ex. A.

24.    Defendant AGM has failed and refused to pay to Plaintiffs the Service Compensation sum of not less than $90,000, representing sums due pursuant to the Consignment Agreement for the services provided as described above.

<u>**COUNT I**</u>
<u>**(BREACH OF CONTRACT- REFUSAL TO RETURN DOWN PAYMENT)**</u>

25.    Plaintiffs re-allege and reassert paragraphs 1-24 above as though fully set forth and restated herein.

26.    Defendant AGM's failure and refusal to return the Down Payment of $964,000, despite due demand therefor, constitutes a breach of the Consignment Agreement of the parties.

27.    As a result of Defendant AGM's actions in this regard, the Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at the trial of this matter, but in no event less than the sum of $964,000.

WHEREFORE, Plaintiffs on this Count pray for an Order as follows:

a.    An award of judgment in an amount to be determined at the trial of this matter, but in no event less than the sum of $964,000, representing refund of the Down Payment, together with prejudgment interest as allowed by law;

b.    An award of all reasonable attorneys' fees and costs associated with this action;

c.      An award of such other and further relief as the Court deems just in the premises.

## <u>COUNT II</u>
## (BREACH OF CONTRACT – REFUSAL TO PAY FOR SERVICES)

28.    Plaintiffs re-allege and reassert paragraphs 1-24 above as though fully set forth and restated herein.

29.    The Consignment Agreement further provided that Plaintiffs provide Defendant AGM with certain services during the effective period of the Consignment Agreement. These included sales of Defendant AGM's vehicles on consignment and servicing (collection) of certain note receivables for cars previously sold and financed by Defendant AGM or Defendant AGM's predecessor.

30.    The Consignment Agreement also provided that Defendant AGM would render to Plaintiffs the Service Compensation for providing these services.

31.    There is currently due and owing from Defendant AGM to Plaintiffs an amount not less than $90,000 representing the Service Compensation due for rendering said services and for reimbursement of costs required by the Consignment Agreement.

32.    Despite demand, Defendant AGM has failed and refused to pay the Service Compensation and costs, which failure and refusal is in breach of the Consignment Agreement.

33.    As a result of Defendant AGM's actions in this regard, the Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at the trial of this matter, but in no event less than the sum of $90,000.

WHEREFORE, Plaintiffs on this Count pray for an Order as follows:

a.    An award in an amount to be determined at the trial of this matter, but in no event less than $90,000 together with interest as allowed by law;

b,    An award of all reasonable attorneys' fees and costs associated with this action;

c.    An award of such other and further relief as the Court deems just in the premises.

## COUNT III
## (BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING)

34.    Plaintiffs re-allege and reassert paragraphs 1-33 above as though fully set forth and restated herein.

35.    In entering into the Consignment Agreement and carrying out its duties thereunder, Defendant AGM was under a duty to act in good faith and with fair dealing.

36.    The Plaintiffs reasonably expected Defendant AGM to return the Down Payment if conditions of the Consignment Agreement so dictated and to pay it for services rendered for the benefit of Defendant AGM and pursuant to the Consignment Agreement.   Instead, Defendant AGM wrongly and in bad faith withheld both such sums.

37.    As a result of Defendant AGM's actions in this regard, the Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at the trial of this matter, but in no event less than the sum of $1,054,000.

WHEREFORE, Plaintiffs on this Count pray for an Order as follows:

a.    An award in an amount to be determined at the trial of this matter, but in no event less than $1,054,000, together with interest as allowed by law;

b.      An award of all reasonable attorneys' fees and costs associated with this action;

c.      An award of such other and further relief as the Court deems just in the premises.

## COUNT IV
## (UNJUST ENRICHMENT)

38.    Plaintiffs re-allege and reassert paragraphs 1-24 above as though fully set forth and restated herein.

39.    Defendant AGM has unlawfully and unfairly retained the Down Payment and Service Compensation for its own enrichment, and the retention of the Down Payment and Service Compensation by Defendant AGM violates fundamental principles of justice, equity and good conscience.

40.    If Defendant AGM is permitted to exercise control or ownership over such monies, or to interfere with Plaintiffs' lawful claims of ownership to such monies, and thereby reap the benefits of the Down Payment and Service Compensation, then Defendant AGM will be unjustly enriched at Plaintiffs' expense.

41.    Defendant AGM, therefore, has been unjustly enriched at the expense of Plaintiffs, in the amount of $1,054,000, exclusive of any prejudgment interest on this sum.

WHEREFORE, Plaintiffs on this Count pray for an Order as follows:

a.      An award of $1,054,000, plus prejudgment interest;

b.      An order of injunctive relief preventing Defendant AGM from utilizing the Down Payment or Service Compensation, or any portion thereof;

c.    For an Order granting immediate, temporary, preliminary and permanent injunctive relief necessary to prevent Defendant AGM's continued violation of Plaintiffs' rights to the Down Payment and Service Compensation;

d.    An award of all reasonable attorneys' fees and costs associated with this action;

e.    An award of such other and further relief as the Court deems just in the premises.

## COUNT V
## (UNLAWFUL CONVERSION/CONSTRUCTIVE TRUST)

42.    Plaintiffs re-allege and reassert paragraphs 1-24 above as though fully set forth and restated herein.

43.    In the instant Complaint, Plaintiffs seek the return of $1,054,000, as identified herein, for which Defendant AGM refuses to reimburse Plaintiffs.

44.    By Defendant AGM's refusal to return the monies sought in this Complaint, despite the repeated oral and written demands to do so, Defendant AGM is wrongfully depriving Plaintiffs of specifically identifiable monies to which Plaintiffs are entitled.

45.    Defendant AGM has engaged in a conscious and deliberate disregard for the rights of Plaintiffs, and such disregard constitutes willful and wanton misconduct.

46.    As Defendant AGM has wrongfully and without authorization continued to assume control over the Down Payment and Service Compensation, Defendant AGM has improperly converted these monies for its own use.

47.    Defendant AGM's conversion of Plaintiffs' right to $1,054,000 unjustly enriched Defendant AGM.  The circumstances of that conversion make it inequitable for Defendant AGM to retain title or beneficial interest over Plaintiffs' monies.

48.    Therefore, Plaintiffs are entitled to have a constructive trust placed on the $1,054,000 presently held by Defendant AGM, and Plaintiffs are further entitled to an order granting Plaintiffs the title and beneficial interest over those monies.

49.    As a direct and proximate result of Defendant AGM's wrongful conversion, Plaintiffs have incurred the expense of retaining counsel in Illinois to pursue recovery of such funds.

WHEREFORE, Plaintiffs on this Count pray for an Order as follows:

a.    An award of a constructive trust placed on the $1,054,000 presently held by Defendant, and an order granting Plaintiffs the title and beneficiary interest over those funds;

b.    An award of punitive damages in the amount of not less than $3,000,000;

c.    An award of all reasonable attorneys' fees and costs associated with this action; and

d.    An award of such other and further relief as the Court deems just in the premises.

## COUNT VI
## (FRAUD IN THE INDUCEMENT)

50.    Plaintiffs re-allege and reassert paragraphs 1-24 above as though fully set forth and restated herein.

51.    Defendant AGM fraudulently induced Plaintiffs into entering and executing the Consignment Agreement based on representations on which Plaintiffs relied, and which contained material misstatements, misrepresentations and/or omissions.

52.    By example, Defendant AGM advised Plaintiffs that financial data for accounts in the portfolio of Tex-Star Motors, Inc. and its finance arm, Ranger Credit, Inc. (hereinafter "Tex-Star/Ranger Credit Accounts") were in "current" paid status, *i.e.* no account payments were past due.

53.    Specifically, on or about April 12, 2007, Paul Whitley, Senior Vice President for Surge Capital, acting on behalf of and/or in connection with Defendant AGM, provided Plaintiffs with financial data, included in an electronic "portfolio" for the Tex-Star/Ranger Credit Accounts.

54.    Mr. Kellagher and Michele Clark, Secretary and Controller for Plaintiff AUA, on behalf of Plaintiffs, conducted an immediate review of the data.

55.    Upon this data review, Mr. Kellagher and Ms. Clark determined that, of the "Series 7000" Tex-Star/Ranger Credit Accounts, there were approximately 200 accounts which contained no "deferment exceptions," 455 accounts had one "deferment exception," 222 accounts had two "deferment exceptions," 121 accounts had three "deferment exceptions," 57 accounts had four "deferment exceptions," and 49 accounts had five to nine "deferment exceptions."

56.    A "deferment" is an accommodation allowed by the financing party to add a missed payment to the end of the loan obligation in lieu of immediate payment. Under the circumstances of a deferment, immediate payment of a past due amount is excused, but the account is not properly designated as "current."

57.  Following Plaintiffs' review and on that day – April 12, 2007 – Mr. Kellagher and Ms. Clark contacted Mr. Whitley regarding the significant number of apparent deferments.  In response, Mr. Whitley indicated that no accounts within the Tex-Star/Ranger Credit portfolio had received a deferment during 2007.

58.  On or about April 19, 2007, Mr. Kellagher and Ms. Clark met with Mr. Whitley at his office, at which time Mr. Whitley reiterated that no accounts within the Tex-Star/Ranger Credit portfolio had received a deferment during 2007.

59.  Between April 19, 2007 and through the time of the closing of the Consignment Agreement, *i.e.* July 19, 2007, Plaintiffs had access only to non-specific data from Mr. Whitley and/or Surge Capital, on behalf of Defendant AGM.  In other words, Plaintiffs did not have customer-specific data on which to test the statements and representations of Mr. Whitley that no accounts had received deferments in 2007.

60.  On the basis of and in reliance on Mr. Whitley's representations, Plaintiffs elected*, inter alia*, to complete the Consignment Agreement and render the Down Payment of $964,000 to Defendant AGM.

61.  Subsequent to the time of the closing of the Consignment Agreement, Plaintiffs were provided customer specific data through the Auto Star database, the servicing and collection software platform used by Defendant AGM and/or Surge Capital.  These individual data ledgers, in fact, demonstrated a significant number of deferments in calendar year 2007 and prior to 2007, in stark contrast to the representations made by Mr. Whitley in multiple conversations prior to entering the Consignment Agreement and making the Down Payment.

62.   The material and false representations made by Mr. Whitley on behalf of and/or in conjunction with Defendant AGM, significantly and materially altered the overall value of the Tex-Star/Ranger Credit portfolio offered by Defendant AGM.

63.   In the aggregate, approximately 724 payments were deferred on 585 accounts (out of approximately 1,500 total accounts) between January 1, 2007 and July, 19 2007.   Therefore, one third of all customer accounts had a deferment as noted in the data provided subsequent to the close of the Consignment Agreement on July 19, 2007.

64.   This material misrepresentation significantly lowered the overall value of the financial parameters and agreement reached by the parties in the Consignment Agreement.   In particular, Defendant AGM's representation that Plaintiff AUP could purchase Defendant AGM's portfolio at 87% of principal was misrepresented based on Mr. Whitley's statements prior to execution of the Consignment Agreement.

65.   Further, based on these materially false and misleading representations, Plaintiffs elected to pursue the lines of business set forth in the Consignment Agreement, including the parties' agreement that Plaintiff AUP would purchase a certain package of motor vehicles and receivables for more than $16 million, as described in ¶ 11 above.

66.   As a proximate result of Defendant AGM's malfeasance, Plaintiffs have suffered significant financial harm.

67.   Defendant AGM has already reaped a windfall of more than $1.1 million in ill-gotten gains from the efforts emanating from the Consignment Agreement.

68.    Defendant AGM's conduct was malicious, and done with intentional and reckless disregard for the rights of Plaintiffs, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiffs on this Count pray for an Order as follows:

a.    An award of judgment against Defendant AGM for damages, punitive damages, costs, interest, and such other relief as the court deems just and proper.

Respectfully Submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Hans U. Stucki
Attorneys for Plaintiffs

Hans U. Stucki, Esq.
Corey M. Perman, Esq.
EPSTEIN BECKER & GREEN P.C.
150 North Michigan Ave. 35th Floor
Chicago, Illinois 60601-7553
Telephone:    312-499-1400
Facsimile:    312-845-1998

Dated: December 20, 2007

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 20th day of December, 2007, I caused a copy of the foregoing document to be filed electronically with the Clerk of the Court, pursuant to the amended General Order on Electronic Case Filing (07-0023) and the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System under Fed. R. Civ. P. 5.  In addition, I have furnished a copy of this document to known Counsel for Defendant, Zack Wagman, Esquire, Katten Muchin Rosenman, LLP, 525 West Monroe Street, Chicago, Illinois 60661-3693, by regular mail (without exhibits) and electronic mail (with exhibits), this 20th day of December, 2007.


By: <u>/s/ Hans U. Stucki</u>